# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LYNNETTE MAYHEW, Individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: 18-2365-JWL-KGG ) |
| ANGMAR MEDICAL HOLDINGS, INC., d/b/a ANGELS CARE HOME HEALTH, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM & ORDER

Now before the Court is Defendant's Motion to Compel. (Doc. 41.) After reviewing the submissions of the parties, Defendant's motion is **GRANTED in part** and **DENIED in part** as more fully set forth herein.

## FACTUAL BACKGROUND

Plaintiff brings this action for allegedly unpaid and improper wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. Plaintiff alleges that she

> worked as an hourly, non-exempt LPN from 2017 until the end of her employment. At all relevant times, Defendant employed Plaintiff as an hourly employee. Plaintiff alleges that her job duties routinely required her to work in excess of forty (40) hours per workweek, and that she was often denied overtime premiums and/or not

1

> paid for the entirety of the compensable straight time or overtime hours she worked per workweek.
>
> Plaintiff alleges that she (and all similarly situated hourly, non-exempt employees) kept her hours of work using the company-wide timekeeping practices and policies put in place by Defendant. Plaintiff alleges that she and other similarly situated hourly, non-exempt employees were required to work off the clock. This work occurred before the beginning of their shifts, following the end of their shifts, and during their shifts.
>
> As hourly, non-exempt employees, Plaintiff and other similarly situated hourly, nonexempt employees are and were entitled to overtime premiums for hours worked in excess of forty (40) each week. *See* 29 U.S.C. § 213. The unpaid work time that Defendant required Plaintiff and other similarly situated hourly, non-exempt employees to work off the clock often put Plaintiff and other similarly situated employees at a total number of hours exceeding forty (40) in a workweek. Plaintiff alleges that Defendant's policies and practices willfully deny hourly, non-exempt employees overtime pay for all hours worked including hours worked beyond forty (40) in a workweek.

(Doc. 40, at 1-2; *see also generally* Doc. 1.) Plaintiff has plead her case as a collective action and recently filed a brief seeking conditional certification, which is currently pending before the District Court. (Doc. 40, at 10; Doc. 43.)

Defendant generally denies Plaintiff's allegations. Defendant contends that it was never Plaintiff's employer. (Doc. 48, at 2-3.) Rather, according to Defendant, Plaintiff was employed by E Medical Group of Kansas, Inc. and E Medical Group No. 4, LLC and during that employment, "the named defendant, AngMar Medical Holdings, Inc. provided certain payroll and Human Resources

services to those entities." (*Id.*, at 3.) Defendant contends that it "was not plaintiff's employer, and indeed, has not employed any LPNs at any time material hereto." (*Id.*)

Plaintiff alleges that Defendant "owns and operates multiple subsidiary entities, including but not limited to, E Medical Holdings of Kansas, E Medical Holdings of Kansas No. 4, Angels Care Home Health, and other entities." (Doc. 1, at 3.) According to Plaintiff,

> [e]vidence gathered to date indicates that Angmar was a co-employer pursuant to 29 U.S.C. §201, which states that under the FLSA, an 'employer' subject to the Act is defined as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.' Under a Department of Labor ('DOL') regulation interpreting the FLSA, joint employers exist 'where the employee performs work which simultaneously benefits two or more employers.' 29 U.S.C. § 201. A joint employment relationship generally exists in situations: (1) where employers arrange to share the employee's service; (2) where one employer acts in the interest of the other employer in relation to the employee; or (3) where employers are not entirely dissociated with respect to a particular employee and may share control of the employee, either directly or indirectly, because of the fact that one employer is controlled by or under common control with the other employer. To determine the existence of joint employers, courts generally look to whether the alleged joint employers 'exercise[d] significant control over the same employees.' Courts recognize independent entities as joint employers if the entities 'share or co-determine those matters governing the essential terms and conditions of employment.' ***Creech v. P.J. Wichita, L.L.C.***, No. 16-CV-2312-JAR-GEB, 2017 U.S. Dist. LEXIS 33340, at *13-14

3

> (D. Kan. Mar. 8, 2017). Plaintiff seeks evidence through
> this discovery to refute Defendant's assertion that it was not
> a Plaintiff's employer.

(Doc. 40, at 2-3.)

At issue are Plaintiff's responses to certain of Defendant's First Combined Interrogatories, Requests for Admissions, and Requests for Production of Documents. (Doc. 41-1.) Although the parties were able to resolve several of their disagreements, other issues remain unresolved, resulting in the present motion. (Doc. 41, at 4-6.)

## ANALYSIS

### I. Legal Standard for Motion to Compel.

"Courts are given broad discretion to control and place appropriate limits on discovery." ***Semsroth v. City of Wichita***, No. 06-2376-KHV-DJW, 2007 WL 2287814, at *1 (D. Kan. Aug. 7, 2007) (citing ***Kutilek v. Gannon***, 132 F.R.D. 296, 297 (D. Kan. 1990)) (in context of whether to stay discovery). Magistrate Judges are "afforded broad discretion in the resolution of non-dispositive discovery disputes." ***In re Urethane Antitrust Litig.***, No. 04-1616-JWL, 2014 WL 61799, at *1 (D. Kan. Jan. 8, 2014) (citing ***A/R Roofing, L.L.C. v. Certainteed Corp.***, 2006 WL 3479015, at *3 (D. Kan. Nov. 30, 2006) ) (other internal citations omitted).

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claim

> or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable. ***Holick v. Burkhart***, No. 16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

Relevance is "broadly construed" at the discovery stage. ***Kimberly Young v. Physician Office Partners, Inc.***, No. 18-2481-KHV-TJJ, 2019 WL 4256365, at *1 (D. Kan. Sept. 9, 2019) (citation omitted). "Relevant information is 'any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claims or defenses." *Id*. (quoting ***Rowan v. Sunflower Elec. Power Corp.***, No. 15-cv-9227-JWL-TJJ, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (quoting ***Oppenheimer Fund, Inc. v. Sanders***, 437 U.S. 340, 351 (1978)).

> When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by that discovery would outweigh the ordinary presumption in favor of broad disclosure.

*Id.* at *2 (quoting *General Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003)). A party asserting objections as to breadth, burdensomeness, vagueness, and ambiguity has the burden of supporting such objections unless the requests are facially objectionable. *Id.*, at 3-4. Within these parameters, the Court will address the various objections raised.

### A.  Interrogatories at Issue.

#### 1.  Interrogatories 10-15, and 18.

Interrogatory No. 10 asks Plaintiff to provide the "factual basis for your contention that you were not paid minimum wage" and to identify the dates on which this occurred. (Doc. 41-3, at 9.) Interrogatory No. 11 asked Plaintiff to state the "factual basis for your contention that you were required to work 'off the clock,'" asking Plaintiff to list each time she "worked without entering that time on your timesheet or time record." (*Id.*, at 10.) For Interrogatory No. 12, Plaintiff was asked to indicate the "factual basis for your contention that you were not paid time and a half when you worked in excess of forty hours in a workweek," and to identify such dates. (*Id.*)

Interrogatory No. 13 inquired as to Plaintiff's "factual basis for [the] contention that any other person who was employed by E Medical Group of Kansas, Inc. or E Medical Group of Kansas No. 4, LLC was required to work 'off the clock," identifying such individuals and the dates worked. (*Id.*, at 11.)

6

Interrogatory No. 14 seeks the "factual basis for [Plaintiff's] contention that any other person who was employed by E Medical Group of Kansas, Inc. or E Medical Group of Kansas No. 4 LLC was paid less than $7.25 per hour," including the identity of such persons and the corresponding dates this occurred. (*Id*., at 11-12.)

With Interrogatory No. 15, Plaintiff was asked to provide the "factual basis for your claim that any other person who was employed by E Medical Group of Kansas, Inc. or E Medical Group of Kansas No. 4, LLC was not paid time and half when they worked in excess of forty hours in a workweek," and to identify such persons and when this allegedly occurred. (*Id*., at 12.) Interrogatory No. 18 asked Plaintiff to state the "factual basis for [her] contention that defendant has committed a willful violation of the FLSA." (*Id*., at 14.)

Plaintiff objected that each of these Interrogatories seeks information protected by the attorney client privilege and/or work product doctrine, by seeking "disclosure of counsel's mental impressions, conclusions and/or opinions." (*Id*.) Plaintiff argues that this "contention" interrogatory "implicates the 'selection and compilation' theory of the work product doctrine by asking Plaintiff's counsel "to identify specific facts or documents that Plaintiff contends supports and/or justifies Plaintiff's position that Plaintiff was paid unlawfully." (*Id*., at 9-10.) Plaintiff states she does not have to respond to the Interrogatory and, as a "contention"

7

Interrogatory, it is premature "as discovery is on-going." (*Id.*) The Court will address these various objections individually.

### a. contention objection.

"Contention interrogatories are expressly permitted by Rule 33(a), which states an interrogatory 'is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact....'" Fed.R.Civ.P. 33(a)(2). Such interrogatories are designed to "narrow and define issues for trial and to enable the propounding party to determine the proof required to rebut the respondent's position." ***Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.***, No. 05-2164-MLB-DWB, 2007 WL 2192860, at *1 (D. Kan. July 25, 2007) (quoting ***Steil v. Humana Kan. City, Inc.***, 197 F.R.D. 445, 447 (D. Kan. 2000)). Plaintiff's objection that contention Interrogatories are objectionable is **overruled**.

Plaintiff points out that Defendant has indicated "that it is 'merely seeking the facts underlying the statements in plaintiff's Complaint.'" (Doc. 47, at 4 (citation omitted).) Plaintiff argues that "[i]f that is truly the case, then the Motion can be denied as moot because the Plaintiff was deposed for an entire day about the basis for the allegations." (*Id.*) Plaintiff's argument is misguided. This Court has held that

> [p]arties may choose the manner and method in which they conduct discovery. The Federal Rules provide

> several vehicles for discovery. Parties may choose their preferred methodology. Courts generally will not interfere in such choices.

*McCloud v. Bd. Of Geary Cnty. Comm'rs*, No. 06-1002-MLB, 2008 WL 3502436 at *2 (D. Kan. Aug. 11, 2008) (citing *Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.*, No. 9402395–GTV, 1995 WL 625962, at *5 (D. Kan. Oct. 5, 1995)). "Similarly, parties are also free to request the same information by more than one discovery method. For instance, it is entirely common for a party to ask a question in a deposition that has already been posed via interrogatory." *Chavira v. Packers Sanitation Serv. Inc., Ltd.*, NO. 17-2281-HLT-KGG, 2018 WL 5925002, *7 (Nov. 13, 2018).

The Court also **overrules** Plaintiff's conclusion that she is not required to respond to such Interrogatories while "discovery is on-going." Plaintiff argues that

> the allegations are based on the company-wide policies and procedures the Defendant has implemented to systemically deprive its LPNs and LVNs of their lawfully earned wages. … The 'specific factual basis' for each claim will be proven through the computer records that the company possesses, but refuses to produce.

(Doc. 47, at 4.) While Plaintiff is free, and obligated, to supplement her discovery responses as additional responsive information becomes available, Plaintiff is also required to respond to relevant, proportional discovery requests as they are served with information currently at her disposal.

### b. implication of the attorney-client privilege and work product doctrine.

As discussed above, Plaintiff's responses to these interrogatories includes the objection that the requested information implicates the attorney-client privilege and/or the work product doctrine. According to Defendant, during "the meet-and-confer discussion, defendant's counsel made it clear that she does not want to invade the province of attorney-client communications." (Doc. 41, at 11.)

Defendant continues that Plaintiff testified during her deposition "that she did not consult with or retain counsel until approximately a month or six weeks prior to her resignation." Defendant is correct that "[a]ny facts that plaintiff became aware of prior to ever talking to a lawyer cannot be protected by the attorney-client privilege." "For testimony to constitute a waiver of the attorney-client privilege, it must disclose the substance of privileged communications." *New Jersey v. Sprint Corp*., 258 F.R.D. 421, 426 (D. Kan. July 2, 2009) (citation omitted). "'Underlying facts are not protected by the privilege.'" *Id*. (citation omitted).

Plaintiff responds that "the selection and compilation" of responsive documents "may warrant work-product protection" in the present situation. (Doc. 47, at 4.) She states she would rather "respond to these interrogatories in whole once all of the information is obtained." (*Id*., at 5).

> At this point, Plaintiff only has a small fragment of the information that will be responsive to the interrogatories and believes that disclosure of that would necessarily require disclosure of counsels' mental impressions. Whereas, disclosure of all the information – once it is obtained from Defendant – does not run that same risk and would therefore be appropriate. In other words, this is an issue of timing and one that need not be decided by the Court.

(*Id.*)

Plaintiff is again misguided. As Defendant states in its reply, these discovery requests are "directed at determining whether plaintiff had been paid less than minimum wage, whether she had been required to work 'off the clock,' and whether she was not paid overtime." (Doc. 54, at 8.) Defendant correctly points out that these "are the allegations in her Complaint, and the basis on which she contends that there should be a collective action certified." (*Id.*) As Defendant correctly asserts, "[i]f [Plaintiff] has no such evidence, then it is difficult to fathom why she believes herself to be 'similarly situated' to other persons, who she claims were also subjected to the same FLSA violations." (*Id.*, at 10.) Plaintiff currently must be in possession of facts and information that support her allegations. Such facts and information are discoverable **now**, not at an undetermined future time when Plaintiff decides she wants to respond. Plaintiff's objections are **overruled.**

The Court thus **GRANTS** Defendant's motion as it relates to these Interrogatories. Plaintiff is instructed to provide supplemental responses **within 30 (thirty) days** of the date of this Order.

B.  **Requests for Production.**

1.  **Request No. 2.**

This document request asks Plaintiff to "[p]roduce all documents which support or pertain to your claim for damages." (Doc. 41-1, at 11.) Plaintiff again objects that this "seeks disclosure of counsel's mental impressions, conclusions or opinions" as well as counsel's "trial strategy." (Doc. 41-3, at 16, 17.) For the reasons discussed above, this objection is **overruled**.

Plaintiff next objects "to the extent this request seeks 'all documents which support or pertain to your claim' as overly broad and unduly burdensome." (*Id.*) According to Plaintiff, "Requests may properly ask for 'principal or material' facts supporting an allegation or defense, but contention interrogatories (which is in essence what this request is) are inappropriate especially before the end of discovery." (*Id.*) For the reasons set forth above, this objection is **overruled**.

Plaintiff next objects to the use of the term "all" because "even through due diligence it would be impossible for Plaintiff to confirm that she has produced every document to support this contention." (*Id.*, at 17.) The Court **overrules** this hyper-technical objection as it would make the vast majority of document requests

in any litigation objectionable. The Court anticipates that parties involved in litigation surmise that "all" encompasses each, and the entirety, of documents compiled after a party, with assistance of counsel, employs due diligence to collect and produce every non-privileged document responsive do a discovery request to the best of their ability.

The Court thus **GRANTS** Defendant's motion as it relates to these Request No. 2. Plaintiff is instructed to provide a supplemental response **within 30 (30) days** of the date of this Order.

### 2. Requests for Social Media and Text Messages.

Request No. 12 instructs Plaintiff to "produce all social media postings made by you between February 14, 2017 and March 12, 2018, including but not limited to postings on Facebook, Twitter, Instagram, Snapchat, and similar platforms." (Doc. 41-3, at 20.) Request No. 14 seeks "screen shots of any and all text messages or instant messages you sent and/or received between February 14, 2017 and March 12, 2018." (*Id.*) Plaintiff objected that these Requests seek "documents that contain information that is not relevant to the claims and defenses at issue in this case." (*Id.*)

Defendant argues that the information is relevant because Plaintiff "contends that she spent all of her scheduled work hours performing work that benefitted her employer." (Doc. 41, at 16.) According to Defendant, "if instead of working,

plaintiff was using some of her paid time to engage in personal use of social media, or in sending or receiving text messages that were not work related, she would have no basis under the FLSA for arguing that she should be paid for that time." (*Id*.) However, Defendant has cited no authority for the proposition that an hourly worker may be retroactively denied pay for wasting time.

Plaintiff argues that "the Request is not tailored in any way to the allegations at issue in this case, but rather seeks to completely invade Plaintiff's personal life." (Doc. 47, at 7.) She continues that

> [d]espite that, Plaintiff asked Defendant to propose a plan for getting the social media posts it believed were relevant to the work issues in the case and excluding the rest. Defendant said it would do so and then chose to file the instant motion instead. Based on Defendant's decision to pursue the Request as written, Plaintiff respectfully asks that the Court to deny Defendant's motion.

(*Id*.)

Defendant is correct that this Court has previously held that a litigant's social media postings, when relevant, are discoverable. ***Waters v. Union Pacific Railroad Co.***, No. 15-1287-EFM-KGG, 2016 WL 3405173, * 2 (D. Kan. June 21, 2016). That stated, the Court finds that Defendant's Requests Nos. 12 and 14 are irrelevant and, if at all relevant, overbroad to the extent they implicate text messages or social medial postings that Plaintiff created while not at work. The Court is doubtful that even a request tailored to work hours would be relevant, or if

it would be, could be enforced without doing violence to the proportionality requirements of Rules 1 and 26. The Court **DENIES** Defendant's motion regarding Requests No. 12 and 14.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel (Doc. 41) is **GRANTED in part** and **DENIED in part** as more fully set forth herein. Plaintiff is **ORDERED** to produce any and all responsive documents **within thirty (30) days** of the date of this Order.

IT IS SO ORDERED.

Dated this 28th day of October, 2019, at Wichita, Kansas.

S/ KENNETH G. GALE
HON. KENNETH G. GALE
U.S. MAGISTRATE JUDGE
