IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Lynette Mayhew,**
**individually and on behalf of**
**all others similarly situated,**

        **Plaintiff,**

v.                                                  Case No. 18-2365-JWL

**Angmar Medical Holdings, Inc.**
**d/b/a Angels Care Home Health,**

        **Defendant.**

## MEMORANDUM & ORDER

Plaintiff, individually and on behalf of others similarly situated, filed this wage and hour suit against defendant alleging violations of the minimum wage and overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. Specifically, plaintiffs allege that defendant failed to compensate them for all time spent during the continuous workday, including time spent driving to and from home health care visits and for time spent waiting between home health care appointments. In November 2019, the court conditionally certified a class of defendant's current and former Licensed Practical Nurses (LPNs) and Licensed Vocational Nurses (LVNs). This matter is presently before the court on defendant's motion for summary judgment on all claims (doc. 139) and defendant's motion to decertify the collective action (doc. 142). As will be explained, defendant's motion for summary judgment is granted in its entirety and, thus, the motion to decertify is denied as moot. *See Apsley v. Boeing Co*., 691 F.3d 1184 (10th Cir. 2012) (affirming district court's decision granting summary judgment in favor of

defendant on plaintiffs' collective action claim for pattern and practice of age discrimination and denying decertification motion as moot).[1]

## I. Facts

The following facts are uncontroverted, stipulated in the pretrial order, or related in the light most favorable to plaintiffs as the nonmoving parties. Plaintiff Lynnette Mayhew is a Licensed Practical Nurse (LPN) who was employed by defendant as a home health care nurse in Emporia, Kansas beginning in February 2017. Defendant and its related entities compensate home health care nurses in one of two ways, depending on whether the nurse is working as a PRN ("as needed") nurse or a full-time nurse. Nurses working on a PRN basis are paid a per-visit fee for patient visits and a trip fee for associated travel time. PRN nurses establish their own schedules and can decline any visit at his or her discretion. Those nurses are paid an hourly rate when required to participate in other work-related activities such as orientation or training sessions. There is no evidence that any opt-in plaintiff employed as a PRN nurse worked overtime in any workweek. In contrast to PRN nurses, full-time nurses employed by defendant are paid on an hourly basis. These nurses utilize electronic tablets provided by defendant to record time spent on all work-related activities, such as patient visits, traveling between visits, patient charting, coordinating patient care, and time spent picking up supplies.[2] It is uncontroverted that plaintiffs

---

[1] After filing its reply brief, defendant filed an amended reply without leave of court and without any explanation as to how the amended reply differed from the initial reply. The court admonishes defendant to seek leave of court in the future should it need to amend its submissions.

[2] The record is inconsistent as to whether travel time between patient visits was automatically captured by the tablet's software system or whether nurses manually entered that time. Regardless, the evidence reflects that travel time between visits was captured for payroll purposes.

were compensated for the time spent on work-related activities so long as that time was recorded in the tablet.

In February 2018, plaintiff Mayhew decided to start visiting patients in Topeka, Kansas and Wichita, Kansas because there was not enough patient care work in the Emporia area. Defendant advised plaintiff Mayhew that she would not be compensated for the time it took her to drive from her home in Emporia to and from Topeka or Wichita. Defendant, however, provided a car allowance of $6000 per year. Plaintiff Mayhew voluntarily terminated her employment in April 2018.

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.

## II.  Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc.*, 726 F.3d at 1143 (quotation omitted). "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id*. at 1143-44.

## III. Discussion

As articulated by plaintiffs in the pretrial order, all claims asserted by plaintiffs in this lawsuit stem from "one primary violation of the FLSA: the continuous workday rule as set forth in *Steiner v. Mitchell*, 350 U.S. 247 (1956)." Under the continuous workday rule, "[o]nce the work day starts, all activity is ordinarily compensable until the work day ends." *Aguilar v. Mgmt. & Training Corp.*, 948 F.3d 1270, 1279 (10th Cir. 2020) (quoting *Castaneda v. JBS USA, LLC*, 819 F.3d 1237, 1243 (10th Cir. 2016)). The work day begins with an employee's first principal activity and ends with the last principal activity. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005). According to plaintiffs, defendant has violated the continuous workday rule by failing to compensate its home health care nurses for time spent traveling to and from patient visits during the work day and for time spent "waiting" during the work day, such as time between the completion of one visit and the start of the next visit much later in the same day and time spent between the completion of one visit and the next work task of the day. Plaintiff Mayhew also asserts an individual claim based on defendant's failure to compensate her for her commute to and from Emporia once she began visiting patients in Topeka and Wichita. Defendant moves for summary judgment on all claims.

In its motion for summary judgment, defendant first raises an issue that the court has touched on twice before in this litigation—whether defendant employed plaintiffs. At the time the court conditionally certified the class, defendant half-heartedly objected to the issuance of notice of the collective action until a determination as to whether defendant employed plaintiff or any other LPN or LVN. But defendant did not seek resolution of that issue at that time and did not marshal the evidence in a way that would permit the court to resolve the issue. Thus, because

the test for conditional certification does not require a court to definitively resolve whether a particular defendant is the plaintiff's employer, and because plaintiff came forward with some evidence supporting her assertion that she was employed by defendant, the court proceeded with conditional certification. Towards the end of discovery, plaintiffs moved for partial summary judgment on the issue of whether defendant constituted a "joint employer" of plaintiffs. The court denied the motion because plaintiffs failed to come forward with evidence sufficient for the court to hold that no reasonable trier of fact could find other than for plaintiffs. In its motion for summary judgment, defendant now moves for summary judgment on the employer issue, asserting that no reasonable jury could conclude that defendant was a joint employer. Because plaintiffs' claims clearly fail on the merits, the court declines to address this issue.

The court begins with plaintiff Mayhew's individual claim. Plaintiff Mayhew asserts that defendant violated the continuous workday rule by failing to compensate her for time spent commuting from her home in Emporia, Kansas to patient visits in Topeka, Kansas and Wichita, Kansas. The court agrees with defendant that the Circuit's opinion in *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274 (10th Cir. 2006) clearly forecloses this claim. In that case, the plaintiffs argued that they were entitled to compensation for time spent traveling between their homes and the well sites where the plaintiffs actually performed their work, some of which were in remote locations hours away. *Id*. at 1276–77. The Circuit began with the general rule that, pursuant to the Portal–to–Portal Act, employers are not required to compensate their employees for time spent "traveling to and from" the place of their principal activities. *Id*. at 1288 (citing 29 U.S.C. § 254(a)(1)). The Circuit acknowledged, however, that if the plaintiffs' first principal activity took place before traveling to the well site and their last principal activity took place after

returning from the well site, then the plaintiffs' travel time would be included within their compensable workday. *Id.* at 1289. According to the plaintiffs, their workday began prior to traveling to the well site because they were required to load their personal safety equipment into their driller's vehicle prior to traveling to the well site. The Circuit, however, rejected this argument, finding that such activity was not properly considered work at all and, accordingly, did not constitute a "principal activity" sufficient to start the workday for purposes of the continuous workday rule. *Id.*

In this case, plaintiff Mayhew does not suggest that she engaged in any principal activity prior to traveling from her home to Topeka or Wichita. She simply suggests—without reference to pertinent authority—that because her commute was unusually long and because she was "required" to do it, the time is rendered compensable. Of course, in *Smith*, the plaintiffs engaged in an hours-long commute and yet the Circuit held that such time was not compensable. Plaintiff has made no effort to distinguish this case from *Smith* or to explain how her travel time might fall within the continuous workday. To the extent she suggests that her commute is rendered compensable because she sometimes conducted work-related telephone calls during her commute, this argument is rejected. In *Smith*, the Circuit stated, in dicta, that an employee could be compensated for his or her entire commute if that employee was required to perform work for the majority of the commute. *Id.* at 1290-91 (citing *Reich v. N.Y. City Transit Auth.*, 45 F.3d 646, 651-52 (2d Cir. 1995)). The record before the court is devoid of evidence from which a reasonable jury could draw this conclusion. There is no evidence that defendant required her to conduct work-related calls during her commute—in fact, there is evidence that defendant's policies prohibited the use of cell phones while driving. Moreover, there is no evidence from which a

6

reasonable jury could conclude that plaintiff spent the "majority" of her commute engaged in actual work for defendant. Plaintiff offers no evidence about how often she engaged in work-related calls on her commute and how long those calls typically lasted. The court, then, rejects plaintiff's argument that she is entitled to compensation for the entirety of her commute time because of the work she performed during a portion of that time. *See Rickard v. Hennepin Home Health Care, Inc.*, 2016 WL 6089690, at * (D. Minn. Oct. 17, 2016) (rejecting FLSA claims filed by home health care nurse; time spent commuting is not compensable under Portal-to-Portal Act and the fact that nurse brought client files with her did not alter analysis).[3]

Plaintiffs also contend that defendant failed to compensate them for time spent traveling to and from patient visits and that the continuous workday rule required defendant to include such travel time for purposes of compensation. But the evidence simply does not support this claim and undisputedly shows that plaintiffs were in fact compensated for this travel time. Nurses who worked on a PRN basis received trip fees (in addition to per-visit fees) that varied depending on the distance traveled. Plaintiffs do not suggest that this compensation method violates the FLSA and do not suggest that PRNs received less than the minimum wage for a given pay period in light of this compensation method. In short, there is no evidence that defendant violated the minimum wage or overtime provisions of the FLSA with respect to nurses who worked on a PRN basis. And for nurses who worked on an hourly basis, the evidence relied upon by plaintiffs—namely, defendant's employee payroll audit report for Linda Ellis—clearly shows that time spent traveling

---

[3] Plaintiff Mayhew does not contend that she was not compensated for the time she spent on work-related calls; instead, she asserts only that these calls rendered her entire commute compensable.

to and from patient visits was captured by defendant's payroll software and counted as "time worked" for purposes of calculating payroll.[4]

Plaintiffs also assert that time they spent waiting during the work day, such as time between the completion of one visit and the start of the next visit much later in the same day and time spent between the completion of one visit and the next work task of the day is compensable under the FLSA because such time fell within the continuous workday. By way of example, plaintiff asserts that if a nurse finished a skilled nursing visit at 3pm and then did not engage in actual work again until 8pm when he or she decided to spend time coordinating patient care, then the nurse is entitled to compensation for the five hours of down time between the patient visit and the time spent on care coordination. Similarly, plaintiffs contend that if a nurse finished a skilled nursing visit at 10am and did not have another visit until 3pm, then he or she is entitled to compensation for the time between visits as part of the continuous workday. Plaintiffs offer no authority for this expansive reading of the continuous workday. Regardless, on this record, plaintiffs cannot show that such time is compensable under the FLSA.

There are exceptions to the continuous workday rule and an employer does not need to compensate employees when those employees are waiting to be engaged. Indeed, the Department of Labor regulations, following case law, analyze waiting time by drawing a distinction between an employee who is "waiting to be engaged" as opposed to one who is "engaged to wait." *See*

---

[4] By way of example, the payroll audit report for Linda Ellis shows that on January 18, 2016, Ms. Ellis's "total time worked" was 5.97 hours. The total time worked included 3.21 hours spent on patient visits (Ms. Ellis made 4 home visits that day of 1.01; .99; .53 and .68 hours respectively); .75 hours spent on care coordination activities; and 2.01 hours spent traveling to and from each of the 4 visits that she made that day. Without question, the undisputed evidence shows that defendant compensated plaintiffs for travel time within the workday.

*United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1117 (10th Cir. 1999). An employee is on duty and is engaged to wait where "waiting is an integral part of the job." 29 C.F.R. § 785.15. The regulation sets forth the following examples of employees who are engaged to wait and, thus, entitled to compensation: "[a] stenographer who reads a book while waiting for dictation, a messenger who works a crossword puzzle while awaiting assignments, [a] fireman who plays checkers while waiting for alarms and a factory worker who talks to his fellow employees while waiting for machinery to be repaired." *Id*. An employee is off duty and is "waiting to be engaged" where he is "completely relieved from duty" and where the time period is "long enough to enable him to use the time effectively for his own purposes." 29 C.F.R. § 785.16(a). This section describes at least one set of circumstances in which the "continuous workday" is interrupted and the intervening time need not be compensated:

> A truck driver who has to wait at or near the job site for goods to be loaded is working during the loading period. If the driver reaches his destination and while awaiting the return trip is required to take care of his employer's property, he is also working while waiting. In both cases the employee is engaged to wait. Waiting is an integral part of the job. On the other hand, for example, if the truck driver is sent from Washington, DC to New York City, leaving at 6 a.m. and arriving at 12 noon, and is completely and specifically relieved from all duty until 6 p.m. when he again goes on duty for the return trip, the idle time is not working time. He is waiting to be engaged.

29 C.F.R. § 785.16(b).

Those regulations, and the cases from which they are derived, compel the conclusion that plaintiffs are not entitled to compensation for their waiting time. Without question, the uncontroverted facts here demonstrate that plaintiffs are completely relieved of duty and able to use their "waiting" time for their own purposes. Plaintiffs identify no restrictions on their time or movement during such periods and the record reflects that plaintiffs routinely utilized such time

9

exclusively for their own benefit on activities that had nothing to do with defendant's business. Under the facts of this case, time spent waiting as described by plaintiffs is not compensable under the FLSA. *See Rickard v. Hennepin Home Health Care, Inc.*, 2016 WL 6089690, at * (D. Minn. Oct. 17, 2016) (rejecting FLSA claims filed by home health care nurse; time spent waiting to be engaged was not compensable where nurse had ability to engage in personal activities with no known restrictions other than being available for appointments); *United Transp. Union Local 1745*, 178 F.3d at 1117-18 (bus drivers who worked a morning shift and a late afternoon shift, separated by a three to five-hour split shift period in which they were free to do what they wished, except drink alcohol, before reporting back at a specific location to begin their second shift were not entitled to compensation under FLSA for time between shifts).[5]

Lastly, plaintiff asserts in her response to the motion for summary judgment that defendant has improperly failed to include bonuses, car allowances and other remuneration in calculating employees' regular rate of pay for purposes of determining overtime compensation. As highlighted by defendant in its reply, plaintiff failed to include this claim in the pretrial order and, indeed, did not raise this claim at any time until the response to the motion for summary judgment. It has been waived. *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) (claims or theories not included in pretrial order are waived).

---

[5] The court also notes that plaintiffs' expansive reading of the continuous workday rule would unreasonably permit a home health care nurse to unilaterally convert large portions of the day into compensable time merely by deciding to perform patient care coordination activities late in the evening. Taken to its logical conclusion, plaintiffs' articulation of the law would demand that if a nurse elected to perform some care coordination at 5am and then return to sleep before an 11am nursing visit, she would be entitled to compensation for the time she spent sleeping. *See Garcia v. Crossmark, Inc.,* 157 F. Supp. 3d 1046, 1049–50 (D.N.M. 2015).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 139) is granted in its entirety and defendant's motion to certify (doc. 142) is denied as moot.

**IT IS SO ORDERED.**

Dated this 4th day of February, 2022, at Kansas City, Kansas.

*s/ John W. Lungstrum*
John W. Lungstrum
United States District Judge